UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : CRIMINAL NOS. 06-296 (JDB) |
| | : |
| BRANDON LAUREYS, | : |
| | : |
| Defendant. | : |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits the following sentencing recommendation and reasons in support of such recommendation:

Facts

1.      On October 19, 2006, the defendant pleaded guilty to one count of Enticement of a Child or Minor, in violation of the Omnibus Public Safety Emergency Amendment Act of 2006, Act 16-445, §209(b),[1] for attempting to persuade an undercover officer who represented himself to be a child to engage in sexual intercourse.  Specifically, on September 13, 2006, at approximately 4:00 p.m., from his residence in College Park, Maryland, the 20-year old defendant, using the screen name "ilikesexxx," initiated contact in a private Yahoo! chat room with Detective Timothy Palchak of the Metropolitan Police Department, who in an undercover capacity was using the screen name "daddysgrldc" and was posing as a twelve-year old girl named "Amanda."  Early in the conversation, which lasted approximately 45 minutes, "Amanda" told the defendant "ill be 13 soon," to which the defendant without hesitation replied "haha oh really?   nice."  Less than three minutes later, the

---

[1]      This offense is expected to be codified as D.C. Code § 22-3010(b)(1).

defendant asked "Amanda" whether her parents were home, then he asked her to send a picture. Detective Palchak sent a picture of a young child in a bathing suit, to which defendant responded, "cute haha." After sending pictures of himself, the defendant confirmed that "Amanda" was home alone and then said, "Hey, this might sound weird but w/e. you maybe wanna hang or something?" When "Amanda" asked what he wanted to do, the defendant said, "lol idnk. whatever u wanna do. haha :-* ... see what happens haha." After assuring "Amanda" that only he and no one else would be coming over, the defendant said, "haha so you think you might want to?" "Amanda" said she was "just a little nervouse [sic]" because of defendant's screen name and because she never had had sex and heard that it hurts. The defendant said, "not if you do it right haha." The defendant also told "Amanda" that he was "not about making people do stuff they don't want to do," and explained that "it only hurts a littl [sic] compared to how good it feels lol." When "Amanda" then said she was worried about getting pregnant, the defendant assured her that he "always" has condoms. The two at this time had been communicating for just over twenty minutes.[2] The defendant then made arrangements to meet "Amanda" at her apartment building in Washington, D.C., where he was arrested upon arriving at 6:25 p.m.[3] In a search incident to his arrest, the police recovered driving directions from the defendant's home to "Amanda's" address and condoms.

---

[2] By separate cover, the government will provide the Court with copy of the defendant's Yahoo profile, a transcription of the entire Internet conversation between the defendant and "Amanda," and a copy of the photograph of "Amanda" that Detective Palchak sent to the defendant via the Internet, all of which previously were provided to defense counsel.

[3] The defendant would have arrived earlier but for the fact that he was stopped by the police less than a mile away from his destination and ticketed for running a stop sign.

Sentencing Recommendation

2. In 2004, the District of Columbia implemented voluntary sentencing guidelines in criminal cases. Like the federal sentencing guidelines, the D.C. guidelines consider the nature of the offense and the offender's prior criminal history in calculating a suggested sentencing range. The D.C. guideline ranges and sentencing options were derived based on historical data. The prison ranges set out in the guidelines represent the middle 50 percent of historical prison sentences. The guidelines also permit, but do not require, a sentence of probation or a split sentence if, historically, at least 25 percent of cases resulted in such a sentence. *See* Superior Court of the District of Columbia Voluntary Sentencing Guidelines, 2006 Practice Manual at 1-1 to 1-2. The goal of the D.C. guidelines, like the federal guidelines, is "to create a sentencing system that would reduce disparity and increase the likelihood that similarly situated offenders would be treated similarly." *Id.* at 1-1. As with the federal guidelines, judges are required to consider the D.C. guidelines and acknowledge either that they have followed the guidelines in imposing a sentence or state why they did not do so. *Id.* at 1-2. Finally, as with sentences for violations of federal law, sentences under the D.C. criminal code must:

(1) Reflect the seriousness of the offense and the criminal history of the offender;

(2) Provide for just punishment and afford adequate deterrence to potential criminal conduct of the offender and others; and

(3) Provide the offender with needed educational or vocational training, medical care, and other correctional treatment.

D.C. Code § 24-403.01(a). *Compare* 18 U.S.C. § 3553(a)(2).

3. According to the presentence report, the defendant's offense falls within Group 8 of the guidelines and he has a criminal history category of A, resulting in a Guidelines range of 6 to 24

months imprisonment. A sentence of probation or a split sentence also is permissible in this range. The defendant challenges the presentence report's placement of this offense within Group 8 and argues that since it involves an "attempted enticement," it more appropriately should be placed in Group 9. The government disagrees. The offense to which the defendant pled guilty specifically is aimed toward punishing the type of conduct in which the defendant engaged, that is, an attempt to lure someone the defendant believes to be a child, but who actually is an undercover police officer posing as a child, to engage in sexual conduct. The legislature chose to subject violators of this new offense to the same maximum penalty of five years imprisonment as applies to enticement of actual children, and not to the lesser penalties set forth in the separate statute prohibiting attempts to commit sexual offenses. *Compare* D.C. Code § 22-3010 (Enticing a Child) and § 22-3018 (Attempts to commit sexual offenses are subject to not more than ½ the maximum prison sentence authorized for the offense). This decision is logical in that the intent of the defendant is to entice a child to engage in sexual conduct, regardless of whether his efforts in fact were directed toward a child or an adult posing as a child. Thus, the legislature's attachment of the same penalty for the offense to which the defendant pled guilty as for offenses committed under § 3010 clearly suggests that the defendant's offense more appropriately is placed in a higher group for sentencing purposes than offenses committed under § 3018.[4]

4.  Turning specifically to the statutory sentencing factors, without question the defendant's conduct in luring someone he believed to be a twelve-year old child to engage in sexual

---

[4] The D.C. Sentencing Commission has not yet ranked this offense. However, the Guideline Implementation Subcommittee, which is responsible for recommending offense rankings to the full Commission, met on December 12, 2006, and unanimously agreed to recommend that the Commission place this offense in Group 8.

intercourse was depraved and frightening. The defendant, who by his own admission clearly was looking for a sexual encounter that day, eagerly continued his conversation with "Amanda" after she told him she was twelve. He thereafter quickly determined that she was home alone and did not hesitate in encouraging her to have sexual intercourse with him. Although the defendant also said that he had no interest in forcing "Amanda" to do something she did not want to do, one hardly would expect someone seeking a sexual encounter to say anything else. The defendant admittedly knew that a twelve-year old girl was not competent to make such a decision. Moreover, even if an offender legally could assess the maturity of a child truly to "consent" to such conduct, the defendant, in particular, did not have a "firm standard in place" to do so. *See* Psychosexual Risk Assessment Report at 4. The defendant's conduct is even more troubling in light of his many overbearing personality traits, his repeated attempts to justify and excuse his behavior by holding "Amanda" partially responsible for his actions, and the doctor's conclusion, based on the results of several assessment instruments, regarding the defendant's risk of reoffending. *Id.* at 11, 15-16, 18, 19. A sentence of incarceration therefore is necessary and warranted in this case not only to punish the defendant for this extremely disturbing offense, but also to send a message to him and others that serious consequences will flow from such behavior.

5.  The government further notes that pursuant to the plea agreement in this case, the defendant will not be prosecuted for Travel with Intent to Engage in Illicit Sexual Conduct, in violation of 18 U.S.C. § 2423(b), a charge that carries a maximum sentence of thirty years imprisonment, and in the defendant's case, a federal guideline range, taking into account his early plea, of 46 to 57 months. The defendant thus already has benefitted substantially from his acceptance of responsibility in this case.

6.	Balancing these factors, the government requests that the Court impose a sentence of twenty-four months imprisonment, followed by ten years of supervised release conditioned on the defendant's successful completion of a sex offender treatment program and strict restrictions on his use of the Internet and his contact with minors.

                          Respectfully submitted,

                          JEFFREY A. TAYLOR
                          United States Attorney

By:	      /s/      
            ANGELA G. SCHMIDT
            Assistant United States Attorney
            Texas Bar No. 17764980
            Federal Major Crimes Section
            555 4th Street, N.W., 4th Floor
            Washington, D.C.  20530
            (202) 514-7273
            Angela. Schmidt@usdoj.gov